IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 7:21-cv-00099 |
| | ) | |
| | ) | By:  Elizabeth K. Dillon |
| 0.32 ACRES OF LAND OWNED BY | ) | United States District Judge |
| GRACE MINOR TERRY, et al., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mountain Valley Pipeline (MVP) is constructing an interstate natural gas

pipeline.  MVP commenced a condemnation action under the Natural Gas Act, 15 U.S.C. §

717 *et seq.*, to acquire permanent and temporary easements on numerous properties, including a

property located in Roanoke County and owned by Grace Minor Terry.  On March 7, 2018, the

court entered orders in the primary condemnation case, *Mountain Valley Pipeline LLC v.*

*Easements to Construct*, Case No. 7:17-cv-492 (W.D. Va.) (Dkt. No. 613), granting MVP

immediate possession of the easements on this property.[1]

Before the court are the following motions: (1) MVP's motion to exclude expert

testimony by Dennis Gruelle, Linda DeVito, and Larry Florin (Dkt. No. 2); (2) MVP's motion to

exclude testimony by landowner Grace Minor Terry (Dkt. No. 6); (3) MVP's motion for

summary judgment (Dkt. No. 7); and (4) MVP's omnibus motion in limine (Dkt. No. 14).  The

---

[1]  This property was originally joined with another property in Case No. 7:20-cv-136.  On February 18,
2021, the court granted the landowners' motion to sever and directed the clerk to create a new case for the parcel
owned by Grace Terry.  (Dkt. Nos. 29, 30 in Case No. 7:20-cv-136.)

court held a hearing on the motions on August 8, 2022.  (Dkt. No. 22.)  Trial in this matter is currently scheduled to begin on September 20, 2022.

For the reasons stated below, MVP's motion to exclude experts will be granted, MVP's motion to exclude testimony by Grace Terry will be granted in part and denied in part, MVP's motion for summary judgment will be granted.

## I.  BACKGROUND

On October 13, 2017, the Federal Energy Regulatory Commission (FERC) issued an order for MVP to construct, maintain, and operate a natural gas pipeline along a route that includes the property (the Approved Route).  On October 24, 2017, MVP filed an action to condemn easements along the Approved Route on the subject property under Section 7 of the Natural Gas Act, 15 U.S.C. § 717f.  On October 27, 2017, MVP moved for partial summary judgment that it is authorized to condemn the easements and a preliminary injunction granting immediate possession for construction.  On January 31, 2018, the court issued a memorandum opinion and order granting MVP's motion for partial summary judgment and conditionally granting MVP's motion for immediate possession upon a determination of appropriate security. On March 7, 2018, the court set deposits and bonds for the property and granted MVP immediate possession of the easements effective upon making the required deposit and posting the required bond.

Grace Minor Terry is the owner of the subject property, a vacant, unimproved tract of land identified as VA-RO-5149.  The tract contains 15.336 acres and is located on Honeysuckle Road, in Roanoke County, Virginia.  For larger parcel purposes, the tract is included with additional, vacant, unimproved tracts subject to a conservation easement held by the Virginia Outdoors Foundation (VOF).  The total larger parcel is estimated to be 558 acres (according to

landowner expert Gruelle) or 590 acres (according to MVP expert Samuel Long), with land on both sides of Honeysuckle Road (a public road), and is located in part in Roanoke County and in part in Montgomery County.  Under the conservation easement, the property cannot be subdivided despite its frontage on a public road, and it must be sold as a whole.  (Gruelle Report 14, 16, Dkt. No. 2-2.)  Also, only one residential homesite can be developed on the entire larger parcel.  VOF retains all rights to subdivide the property and sell it in any form except as a unified parcel and also retains the property's development rights except for a single house referenced above.  Because Terry and VOF both owned an interest in the property as of March 7, 2018, MVP had to acquire an easement interest from both parties.  VOF has settled with MVP.

The larger parcel also includes an existing AEP easement to service its high voltage transmission power lines with multiple towers that date back to the 1940's.  (Deposition of Grace Terry (Terry Dep.) 59, 65, Dkt. No. 6-3; *see also* Dkt. No. 12-1 at 114 of 223 (noting that there is a "high voltage power line easement that crosses the subject property).)

MVP is condemning a temporary and permanent access easement of 0.32 acres over VA-RO-5149.  (Case No. 7:17-cv-492, Dkt. No. 1 at 155 and Dkt. No. 1-151.)  The temporary easement varies from 20–30 feet in width and the permanent easement varies from 15–20 feet in width.  MVP's access road follows an old logging road on the larger parcel.  The easement provides access to the pipeline being constructed on an adjoining tract.  No part of the pipeline is being constructed on the subject property or the larger parcel.  The access easement is about 668 feet long and runs with an existing roadway from Honeysuckle Road to adjoining, neighboring property to the north.

## II.  DISCUSSION

### A.  Legal Standards

The motions present various issues of just compensation in eminent domain cases as well as issues involving the qualification of experts and their reliability and relevance.  Legal standards regarding the same are set forth herein.

#### 1.  Just compensation for partial permanent takings, including severance damages

The Takings Clause of the Fifth Amendment prohibits the taking of private property without just compensation.  *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536 (2005).  When the government condemns private property for a public purpose, it must pay just compensation for that property.  Just compensation is the monetary equivalent of the property taken, and the federal courts have employed the concept of "fair market value" to determine the condemnee's loss.  *United States v. 564.54 Acres of Land*, 441 U.S. 506, 510–11 (1979); *Almota Farmers Elevator & Warehouse Co. v. United States*, 409 U.S. 470, 473–74 (1973).

Unless otherwise proscribed by Congress, federal law governs "questions of substantive right, such as the measure of compensation" for federal courts in condemnation proceedings.  *United States v. Miller*, 317 U.S. 369, 379–80 (1942).  *See also Tenn. Gas Pipeline Co. v. Permanent Easement for 1.7320 Acres*, No. 3:cv-11-028, 2014 WL 690700 (M.D. Pa. Feb. 24, 2014) (unpublished) (concluding that federal law applies in determinations of just compensation under the Natural Gas Act).  The Fourth Circuit defines just compensation in a case of partial taking as "the value of the land taken plus the depreciation in the market value of the remainder."  *United States v. 97.19 Acres of Land*, 582 F.2d 878, 881 (4th Cir. 1978) (citing *W. Va. Pulp & Paper Co. v. United States*, 200 F.2d 100, 104 (4th Cir. 1952)).  Moreover, "value [of the condemned land] is to be ascertained as of the date of taking."  *Miller*, 317 U.S. at 374.

In *W. Va. Pulp & Paper*, the Fourth Circuit recognized the well-settled principle that "whenever there has been an actual physical taking of a part of a distinct tract of land, the compensation to be awarded includes not only the market value of that part of the tract appropriated, but the damage to the remainder resulting from that taking, embracing, of course, injury due to the use to which the part appropriated is to be devoted." 200 F.2d at 102. The court recognized that the landowner was damaged not only by the loss of the land, but also by the proposed use that caused depreciation to the remainder, and therefore was entitled to be awarded a sum that "would put it in as good position pecuniarily as it would have been if its property had not been taken." *Id.* at 103. The measure of this sum was "the value of the land taken plus the depreciation in the market value of the remainder due to the use made of the part taken." *Id.* at 104. *See also 97.19 Acres of Land*, 582 F.2d at 881 (citations omitted) (explaining that severance damages to the remainder, if any, are measured as "the difference in market value of the residue before and after the taking"). Defendant bears the burden of proving the amount of just compensation. *See United States v. 69.1 Acres*, 942 F.2d 290, 292 (4th Cir. 1991).

## 2. Just compensation for temporary taking

Just compensation for a temporary taking is limited to the market rental value of the property subject to the temporary taking. *See United States v. Banisadr Bldg. Joint Venture*, 65 F.3d 374, 378 (4th Cir. 1995); *see also Briarwood*, 2019 WL 6467833, at *3 (W.D. Va. Dec. 2, 2019). Again, defendant bears the burden of proving the amount of just compensation.

## 3. Damages for perceived market negative influences

In a previous opinion, this court analyzed the law with regard to testimony about damages resulting from perceived market negative influences, such as the perceived danger, or unsafe nature, of pipelines. *See MVP v. 1.23 Acres (Eagle's Nest I)*, Civil Action Nos. 7:18-cv-

00610, 7:18-cv-00612, 2019 WL 8918915 (W.D. Va. July 12, 2019).  The court will not repeat

that entire analysis here, but merely incorporates it by reference.  By way of summary, the court

held that, to be admissible, an expert's opinions with regard to some hazard incident to the use of

the property taken must be supported by some evidence that the hazards are reasonably probable

and more than just speculative.  Moreover, there must be a nexus between those hazards and/or

the public perception in the marketplace—specifically, the marketplace for that property—and a

diminution in value of the property.  In other words, there must be a causal link between the

hazard inherent in the taking and a direct loss in the marketplace.  *United States v. 760.807 Acres*

*of Land*, 731 F.2d 1443, 1448 (9th Cir. 1984); *see also Atl. Coast Pipeline LLC v. 0.07 Acres*,

No. 3:18-cv-00006, 2019 WL 2527571, at *14–17 (W.D. Va. June 19, 2019) (excluding an

expert environmental professional's opinion about a natural gas pipeline's effect on property

value because the analysis was not linked to the specific property's value and was therefore

irrelevant to the determination of just compensation).

### 4.  Expert testimony

Federal Rule of Evidence 702 and the standards established in *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), govern admissibility of expert testimony.  Rule

702 states:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training, or education may testify in the form of an
> opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge
> will help the trier of fact to understand the evidence or to determine
> a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods;
> and
> (d) the expert has reliably applied the principles and methods to the
> facts of the case.

Fed. R. Evid. 702.

Before considering whether a proffered expert's testimony is reliable, the court first determines whether the witness qualifies as an expert. A witness may qualify as an expert on the basis of "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The expertise must relate to the areas in which the expert is expressing opinions. *See Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791, 800 (4th Cir. 1989). Exclusion should occur only where all bases for expertise are lacking with regard to the issue for which the opinion is offered, and a proffered expert "need not be precisely informed about all details of the issues raised in order to offer an opinion." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (quoting *Thomas J. Kline, Inc.*, 878 F.2d at 799).

While the test for exclusion may be a "strict one," *Kopf*, 993 F.2d at 377, some type of relevant expertise is nonetheless required. For example, where experience is one of the bases for a witness's expertise, the witness must "explain how [his] experience leads to the conclusion reached, why [his] experience is a sufficient basis for the opinion, and how [his] experience is reliably applied to the facts." *Radiance Found., Inc. v. Nat'l Ass'n for the Advancement of Colored People*, 27 F. Supp. 3d 671, 674 (E.D. Va. 2013) (alteration in original) (citations omitted). Additionally, a witness's expertise must be tailored, to some degree, to the specific opinions offered and the particular facts in the case; general expertise or knowledge on a broad topic or general field may be insufficient, depending on the facts of a case. *Shreve v. Sears, Roebuck & Co.*, 166 F. Supp. 2d 378, 391–92 (D. Md. 2001) ("The fact that a proposed witness is an expert in one area, does not *ipso facto* qualify him to testify as an expert in all related areas.") (citing *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 247 (4th Cir. 1999)).

After ensuring that an individual qualifies as an expert, this court has an obligation under

*Daubert* to act as a gatekeeper and ensure that any testimony concerning scientific, technical, or other specialized knowledge offered in support of a party's claim is "not only relevant, but reliable." 509 U.S. at 589; *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting same). The proponent of the testimony must establish its admissibility, although it need not prove its expert's theory is correct. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001); *Md. Cas. Co. v. Therm–O–Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998) (proponent of testimony "must come forward with evidence from which the court can determine that the proffered testimony is properly admissible."). First, the trial court must ask whether proffered scientific evidence is valid and reliable. *United States v. Barnette*, 211 F.3d 803, 815 (4th Cir. 2000). Second, the court asks whether the evidence will help the trier of fact, which is generally a question of relevance, or "fit." The court must ask if, assuming the evidence is reliable, it will "assist the trier of fact to understand or determine a fact in issue." *Md. Cas. Co.*, 137 F.3d at 783 (quoting *Daubert*, 509 U.S. at 592).

The court's role in limiting expert testimony is important: "due to the difficulty of evaluating their testimony, expert witnesses have the potential to be both powerful and quite misleading." *Cooper*, 259 F.3d at 199 (citations omitted). Indeed, "given the potential persuasiveness of expert testimony, proffered evidence that has a greater potential to mislead than to enlighten should be excluded." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). Importantly, "[t]he gatekeeping role of the district court is particularly pronounced in condemnation proceedings under Rule 71.1." *United States v. 33.92356 Acres of Land*, 585 F.3d 1, 8 (1st Cir. 2009).

### 5. Landowner testimony

This court has recognized the general principle that property owners are permitted to testify about the value of their property in condemnation cases and incorporates the discussion of that general principle by reference. *MVP v. 1.23 Acres (Eagle's Nest II)*, Civil Action Nos. 7:18-cv-00610, 7:18-cv-00612, 2019 WL 8920215, at **3–6 (W.D. Va. July 12, 2019). To be admissible, a landowner's opinion testimony in condemnation cases must be "grounded, at least in part, on some basis that is not wholly speculative or completely irrelevant." *Id*. at *5. A landowner's testimony should be excluded when it is "based on specialized or technical knowledge and not the owner's familiarity with his own land." *Id*. at *8. Moreover, the owner's "qualification to testify does not change the 'market value' concept and permit him to substitute a 'value to me' standard." *Id*. at *4 (quoting *United States v. Sowards*, 370 F.2d 87, 92 (10th Cir. 1966)).

### 6. Summary judgment

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248–49.

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once the moving party makes this showing, however,

the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c), 56(e).  All inferences must be viewed in a light most favorable to the non-moving party, but the nonmovant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."  *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

As the Fourth Circuit Court of Appeals recently held, parties in condemnation proceedings may move for summary judgment pursuant to Rule 56 because Rule 71.1 does not provide otherwise.  *United States v. 8.929 Acres*, 36 F.4th 240, 251-52 (4th Cir. 2022). Summary judgment is appropriately granted in a condemnation case when there is no genuine issue of material fact regarding the fair market value of the property to be taken.  *See Equitrans, L.P. v. 0.56 Acres*, No. 1:15-cv-106, 2016 WL 3982479, at *1 (W.D.W. Va. July 22, 2016) ("Several courts have granted summary judgment for plaintiffs in condemnation actions regarding the amount of just compensation owed where there was no genuine issue of material fact regarding the fair market value of the property to be taken.") (collecting cases); *Mountain Valley Pipeline v. 1.89 Acres of Land* (*Briarwood*), Civil Action No. 7:19-cv-00078, 2019 WL 6467833, at *3 (W.D. Va. Dec. 2, 2019) (granting motion for summary judgment because without "any indication that these witnesses will testify about market value, there is no basis to find that there is a genuine issue of material fact on the before and after value of Briarwood's property").

## B.  Motion to Exclude Experts

MVP moves to exclude testimony by defendants' expert witnesses: Dennis Gruelle, Linda DeVito, and Larry Florin.

### 1. Dennis Gruelle

MVP does not contend that Gruelle is not qualified to appraise property; instead, it argues that Gruelle's appraisal is not reliable.  Gruelle appraised the property subject to the conservation easement and the high voltage transmission line easement.  The larger parcel includes contiguous tracts that are also subject to the conservation easement,[2] and the conservation easement limits development to one residence.  (Gruelle Report 11–15.)  Gruelle estimates that the larger parcel includes 558 acres.  In his appraisal, Gruelle opines that the entire property—558 acres—has lost 35% of its value, resulting in just compensation of $305,000.  (*Id.* at 36.)  This, he opines, is for a 668-foot long, 40 foot wide, permanent access easement in the corner of a 558-acre property.  However, because of the many errors and omissions discussed below, his report is unreliable and will be excluded.

First, Gruelle makes no mention whatsoever of the pre-existing old logging road, from Honeysuckle Road to a land-locked property adjoining the larger parcel, over which MVP's easement runs.  Ms. Terry acknowledges this road in her deposition testimony.  (Terry Dep. 35.)  While there may be questions about the condition of the road and its use, there is no question that it existed prior to the taking of the property.  Indeed, it can be seen on an aerial photograph taken from Google Earth.  (*See* Rebuttal Report of Joseph Thompson (Thompson Report) 7, Dkt. No. 2-1.)  Because Gruelle makes no mention of the road, his report contains no opinion as to effect of the existing road on the pre-take value of the larger parcel.

Similarly, his evaluation of the properties to which he compares the larger parcel for a pre-take value, does not include an analysis of the effects of this existing logging road or information as to why such an analysis is not required.  Also, regarding the pre-take value of the

---

[2] While not the standard practice and because VOF has settled its portion of the case, the parties agree that the property should be valued as encumbered by the conservation easement.

larger parcel, said to be $865,000, Gruelle uses only one comparator property subject to a conservation easement.  Of the other three properties, one has road frontage and can be developed, one has an existing pipeline easement (which he fails to mention), and one sale was a governmental sale which requires extensive verification before use as a comparator.  *See* Uniform Appraisal Standards for Federal Land Acquisitions (*Yellow Book*); Thompson Report 5.

While no part of the pipeline is being built on the Terry property, Gruelle finds that the property is damaged because the pipeline corridor on other property will be "part of the view vista" for the property.  (Gruelle Report 30.)  "Rural residential development on the west side of Honeysuckle Road would view the MVP project corridor as part of the view vista after the project."  *Id.*  Gruelle opines that the "national audience," which relies on "great views," would "pass" on the property after the MVP project.  *Id.*  Gruelle's analysis in this regard is fundamentally flawed.

MVP is only taking an easement to access its pipeline that is being constructed on the lands of others.  The premise of Gruelle's damage analysis relies upon the location of the pipeline on other properties, which would render the property no longer suitable for residential development.  This analysis violates the rule in *Campbell* that "just compensation assured by the Fifth Amendment to an owner, a part of whose land is taken for public use, does not include the diminution in value of the remainder caused by the acquisition and use of adjoining lands of others for the same undertaking."  *Campbell v. United States*, 266 U.S. 368, 371 (1924). "Diminution in value of a landowner's remainder caused by the United States' use of other lands is not compensable and cannot be considered in valuations for just compensation purposes." *Yellow Book* 4.6.2.2.[3]

---

[3] The Ninth Circuit has adopted a narrow exception to the *Campbell* rule where the land taken from the owner is indispensable to the overall project, the taking from the owner is substantial, and the damages resulting to

Gruelle also finds that the east side of Honeysuckle Road is not suitable for development because of "noise and use of the permanent access road." (Gruelle Report 30.)  He, however, makes no mention of noise and use of Honeysuckle Road (a public road) and the old logging road that already exist.  He also mentions the possibility of erosion and soil disruption and compaction caused by the access easement (*id.* at 29–30), but again does not acknowledge the existing road or this court's prior rulings regarding the exclusion of construction damage from the just compensation analysis.  *See, e.g.*, *See MVP v. 9.89 Acres (Elizabeth Terry)*, Civil Action No. 7:19-cv-00145, 2021 WL 4398032, at *4 (W.D. Va. Sept. 27, 2021) (excluding evidence of alleged impact and possible damages from construction).

Then, having ruled out any suitable location for the development of a residence on the 558 acres, Gruelle determines the value of the property after the take based on sales of large-acreage tracts that are not marketable for residential uses because of lack of road frontage, steep topography, or high voltage transmission lines. (Gruelle Report 30–36.)  Notably, the larger parcel at issue is not developable beyond one residence in its pre-take condition because of the conservation easement.  Moreover, its pre-take condition includes steep topography and high voltage transmission lines.  None of the allegedly comparable sales, however, involve an access road/easement.

Finally, Gruelle errs in assuming that the entire width of MVP's access easement is permanent and calculating just compensation based upon that assumption. (*Id.* at 25-30, 36.)

---

the remainder of the owner's land are inseparable from those caused by the condemnor's use of the land of others. Courts in this and other circuits have not adopted this exception. *E. Tenn. Nat. Gas Co.*, No. 4:02-cv-0179, 2007 WL 2688414 (W.D. Va. Sept. 13, 2007).  In any event, the subject property is not indispensable to the pipeline project because no part of the property is crossed by the pipeline.

MVP's taking consists of a temporary easement that varies from 20–30 feet in width and a permanent easement that varies from 15–20 feet in width.  As a result of his error, Gruelle overvalues the permanent easement and expresses no opinion on the value of the temporary easement.

Because of these errors and omissions, Gruelle's opinion will be excluded as unreliable. *See, e.g.*, *E.E.O.C. v. Freeman*, 778 F.3d 463, 466–67 (4th Cir. 2015) (excluding expert report that had "an alarming number of errors and analytical fallacies").

### 2.  Linda DeVito

Linda DeVito, a broker, has authored a letter opinion.  (Dkt. No. 2-3.)  According to the letter, the pipeline project "serves to reduce marketability, desirability, and [the] ability to sell [the] property for the highest gain."  The letter does not provide any supporting market data. Therefore, DeVito's letter opinion will be excluded.  *See Elizabeth Terry*, 2021 WL 4398032, at *5 (excluding Devito's opinion because "it does not identify the facts and data upon which her opinions are based—that lenders will withhold loans or that individuals have declined to purchase a property with a pipeline or utility").

### 3.  Larry Florin

Defendant has also disclosed Larry Florin, but Florin has not provided any report. According to defendant, Florin will testify as to the "reasonable probability of rural residential subdivision" and "the highest and best use of mountainside property and its market demand." (Dkt. No. 2-4 at 3–4.)  Defendant has not disclosed Florin's actual opinions on these subjects or the facts and data that support his opinions.  Defendant also states the Florin will testify that "road easements for private rights-of-way are inconsistent and incompatible with high-end rural residential development for the loss of privacy and views."  (*Id.*)

The disclosures about Florin's opinions—reasonable probability of rural residential subdivision, highest and best use of mountainside property, and road easements for private rights-of-way being inconsistent and incompatible with high-end rural residential development—are not supported by sufficient facts or data.  Therefore, they will be excluded.  *See Elizabeth Terry*, 2021 WL 4398032, at *6 (excluding Florin's opinion because "it does not state the facts or data upon which the opinion is based and does not link unwilling buyers or developers to a diminution in market value").

## C.  MVP's Motion to Exclude Testimony by Landowner Grace Minor Terry

In addition to the appraisal report of Gruelle, Terry has disclosed her own opinion of value.  (Def.'s Rule 26(a)(2) Disclosure, Dkt. No. 6-2 at 4–5.)  According to the disclosure, Terry plans to testify that the property was worth $1,000,000 before the taking and that the taking has caused a diminution in value by one-third.  (*Id.*)  As support for her before-taking value, Terry relied on "sales of Keystone Design in the last five years."  (*Id.*)  As support of her after-taking value, Terry relied on "the Green Hollow Sales."  (*Id.*)

At her deposition, Terry testified that, in her opinion, the value of the property before the taking was $1,000,000.  (Terry Dep. 67.)  She believes the taking caused a 33% diminution in the value to the entire larger parcel.  (*Id.* at 68.)  As stated in her written disclosure, Terry testified that she relied on the two sales on Green Hollow Road to arrive at her damages figure.  (*Id.* at 68–69, 73–74.)  Terry acknowledged that those sales involved properties with pipeline easements.  Terry stated, however, that these sales were the only sales that she considered to arrive at her opinion of damages.  (*Id.* at 73–74.)

When asked for more information about how she arrived at damages of one-third, Terry testified that she based her assessment on the diminution in value associated with the

conservation easement on the property.  (*Id.* at 84–87.)  Specifically, Terry considered an

appraisal that was made for the purpose of applying for the conservation easement and

determined that the conservation easement devalued the property by about 30%.  Terry decided

that MVP's easement devalued the property equally.  Terry stated that one could reach the same

conclusion from just looking at what happened to the sales on Green Hollow.  According to

Terry, "I'm saying it the way that you'd like to hear it, but ping, ping, pong is how I got there."

(*Id.* at 87.)

  The court finds that there is no rational basis for Terry's opinion that the conservation

easement and MVP's access easement affect the property equally.  *See Eagle's Nest II*, 2019 WL

8920215, at \*4–5 (stating that opinion testimony by landowner must have a rational foundation

and cannot be based on speculation or unwarranted assumption).  The conservation easement

took property that was suitable for subdivision and multiple homesites and limited the property

to development of a single residential homesite.  MVP's access easement did not change the

highest and best use of the property, which remains a single residential homesite according to

Terry.  (Terry Dep. 87.)

  Additionally, Terry's alternate opinion on value after the taking, based on the two sales

on Green Hollow Road, is likewise inadmissible.  The sale by Fulton/Brokaw to Reddy occurred

before a taking by MVP, and it was the buyer who sold an easement to MVP.  The sale by

Montouri to Reddy occurred without knowledge that MVP had already taken possession of the

property, and it is unreliable, as the court previously ruled.  *MVP v. 8.37 Acres (Frank Terry II)*,

No. 7:20-cv-134, 2020 WL 5526504, at \*3 (W.D. Va. Aug. 26, 2020).  Even if otherwise

reliable, the sales on Green Hollow Drive have pipeline easements, not access easements.  There

is no basis to conclude that an access easement and a pipeline easement have the same effect on valuation of property.

To the extent Terry's testimony is not based on her personal knowledge of the property, it will be also be excluded. *MVP v. 1.30 Acres (Baker)*, No. 7:18-cv-0607, 2019 WL 4306981, at *7 (W.D. Va. Sept. 11, 2019) (landowner's testimony in condemnation cases must be based on personal knowledge rather than opinions of others). However, as in the *Frank Terry* case, Grace Terry appears to have personal knowledge of her property that is not based upon "the technical or specialized' knowledge of others." *Frank Terry II*, 2020 WL 5526504, at *3. From her deposition, it appears that some of Grace Terry's testimony is that which she "gathered knowledge from others, thus bringing it within [her] own personal knowledge." *Id.* To the extent Terry relies on her personal knowledge, she may testify.

For the above reasons, the court will grant MVP's motion in part and deny it in part. Because Grace Terry's testimony regarding a percentage of diminution in value and the value of the property post-take, is inadmissible, it will be excluded. She will, however, be entitled to testify about her property and her valuation of the property pre-take.

## D. MVP's Motion for Summary Judgment

MVP's motion is primarily premised on their request to exclude all of Terry's available evidence, her testimony and Gruelle's report, on the value of her property. The court will, however, allow Ms. Terry to testify as to the value of her land before the take and about her land generally. MVP then argues that the landowner has the burden of proving the amount of just compensation and, because she has not come forward with sufficient evidence on summary judgment, MVP's motion must be granted. While this premise is correct in a standard civil case, a condemnation case stands on different footing.

In a standard civil case where a plaintiff seeks monetary damages, a plaintiff's failure on summary judgment to present evidence of damages results in summary judgment for the defendant.  In a condemnation case, however, the Constitution requires the entity condemning property to pay just compensation.  *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536 (2005); *see also Mountain Valley Pipeline, LLC v. 0.47 Acres*, 853 F. App'x 812 (4th Cir. 2021) (affirming award of damages to landowner where landowner offers no evidence of diminution of value); *Briarwood*, 2019 WL 6467833, at *3 (granting summary judgment and awarding damages to landowners where landowners offered no evidence on the value of the property).  Where a landowner can properly testify to all or a portion of the just compensation calculation, there is a question of fact for determination by a jury.  *See, e.g.*, *Equitrans*, 2016 WL 3982479, at *4 (finding issue of fact created by landowner testimony).

Given that Terry will be allowed to testify regarding the pre-take value of her property, there is an issue of fact as to the amount of just compensation for the permanent access easement.  Thus, MVP's motion for summary judgment will be denied in part.

Terry, however, offers no evidence of the value of the temporary access easement.  For the temporary easement taken by MVP, just compensation is to be based on the fair market rental value of the land, subject to the temporary easement for the duration of the easement.  The only evidence of this valuation is from the Long appraisal report offered by MVP.  (Dkt. No. 7-1 at page 54-55).  He opines that the temporary access road easement contains 0.085 acres.  He then calculates the market rent for three, four, and five years.  Giving Terry the benefit of calculations regarding the length of the rental term for the temporary encumbrance, the value of the temporary access road easement for five years is $55.  There is no dispute of fact, so the court

will grant MVP's motion for summary judgment as to the temporary access road easement and award Terry $55 for the same.

### E. MVP's Omnibus Motion in Limine

#### 1. Evidence of fear of pipelines and claims that buyers would not purchase the property because of the pipeline

The court will grant this portion of the motion because it is unopposed and for the reasons articulated in previous decisions. *See, e.g., MVP v. 1.85 Acres (Lucki)*, Civil Action No. 7:19-cv-00147, 2020 WL 1067001, at *6 (W.D. Va. Mar. 5, 2020); *MVP v. 1.81 Acres (Jones)*, No. 7:18-cv-151, 2019 WL 3945272, at *5 (W.D. Va. Aug. 21, 2019) (excluding evidence of explosion area because landowners could not link the evidence to a diminution of market value).

#### 2. Claims that the Pipeline is Dangerous or Unsafe and Evidence of Other Pipeline Accidents or Incidents

The court will grant this portion of the motion because it is unopposed and for the reasons articulated in previous decisions. *Lucki*, 2020 WL 1067001, at *6 (stating that "the court has also excluded this type of evidence, and will do so again in this case" because "there is no causal link between any hazard, or perception thereof, and a diminution in value of the property").

#### 3. Comments on FERC Docket

Gruelle cites comments filed on the FERC docket by opponents of the pipeline. (Gruelle Report 30, 32.) Gruelle's testimony has been excluded, and these comments will be excluded as inadmissible hearsay. They will also be excluded because they are not linked to diminution of market value. *Lucki*, 2020 WL 1067001, at *6 ("[A]necdotal conversations relating to various fears or perceptions, without foundation, are entirely insufficient as a basis for expert testimony.").

### 4. Evidence of Alleged Impacts from Construction

Evidence of alleged effects from construction will be excluded because these possible

impacts are not inherent in the easement. *See Lucki*, 2020 WL 1067001, at *7 (excluding

evidence of impact to springs, wells, drainage, and soil compaction because compensable loss in

eminent domain proceedings is limited to risks inherent in the easement).

### 5. Evidence of Possible Utility Corridor

The court will grant this portion of the motion because it is unopposed and for the reasons

articulated in previous decisions. *MVP v. 8.37 Acres (Frank Terry I)*, Civil Action No. 7:20-cv-

134, 2020 WL 4810128, at *8 (Aug. 18, 2020) (excluding evidence of utility corridors when the

speculative nature of the testimony was conceded).

### 6. Examination of Joseph E. Thompson Concerning Vacated Order

Landowner does not oppose this part of the motion, which will be granted.

### 7. Evidence of Settlement Offers and Communications

Landowner does not oppose this part of the motion, which will be granted.

### 8. Evidence of Amounts Paid for Easements on Other Properties

Landowner does not oppose this part of the motion, which will be granted.

### III.  CONCLUSION

Based on the foregoing, it is HEREBY ORDERED that MVP's motion to exclude expert

testimony (Dkt. No. 2) is GRANTED; MVP's motion to exclude testimony by Grace Terry (Dkt.

20

No. 6) is GRANTED IN PART and DENIED IN PART; MVP's motion for summary judgment

(Dkt. No. 7) is GRANTED IN PART and DENIED IN PART; and MVP's motion in limine

(Dkt. No. 14) is GRANTED in all respects.

     Entered: September 7, 2022.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge