IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

**July 11, 2025**

LAURA A. AUSTIN, CLERK
BY: /s/ S. Wray
DEPUTY CLERK

| | | |
|---|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:17-cv-00492 |
| | ) | |
| | ) | By: Elizabeth K. Dillon |
| EASEMENTS TO CONSTRUCT, | ) | Chief United States District Judge |
| OPERATE, AND MAINTAIN A | ) | |
| NATURAL GAS PIPELINE OVER | ) | |
| TRACTS OF LAND IN GILES COUNTY, | ) | |
| CRAIG COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

| | |
|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:19-cv-00145 |
| | ) |
| | ) |
| 9.89 ACRES OF LAND OWNED BY | ) |
| ELIZABETH TERRY REYNOLDS, | ) |
| | ) |
| Defendant. | ) |

| | |
|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:20-cv-00134 |
| | ) |
| | ) |
| 8.37 ACRES OF LAND OWNED BY | ) |
| FRANK H. TERRY, JR., | ) |
| | ) |
| Defendant. | ) |

MOUNTAIN VALLEY PIPELINE, LLC,   )
   )
      Plaintiff,   )
   )
v.   )   Civil Action No. 7:20-cv-00135
   )
   )
13.47 ACRES OF LAND OWNED BY   )
JOHN COLES TERRY, III,   )
   )
      Defendant.   )


MOUNTAIN VALLEY PIPELINE, LLC,   )
   )
      Plaintiff,   )
   )
v.   )   Civil Action No. 7:20-cv-00136
   )
   )
2.20 ACRES OF LAND OWNED BY   )
FRANK H. TERRY, JR., individually and as   )
Executor of the Estate of HILAH PARKS   )
TERRY, DECEASED,   )
   )
      Defendant.   )


MOUNTAIN VALLEY PIPELINE, LLC,   )
   )
      Plaintiff,   )
   )
v.   )   Civil Action No. 7:21-cv-00099
   )
   )
0.32 ACRES OF LAND, OWNED BY   )
GRACE MINOR TERRY,   )
   )
      Defendant.   )

## MEMORANDUM OPINION

Plaintiff Mountain Valley Pipeline (MVP) is constructing an interstate natural gas

pipeline.  MVP commenced a condemnation action under the Natural Gas Act, 15 U.S.C. § 717

*et seq.*, to acquire permanent and temporary easements on numerous properties. The properties included the individual properties listed as defendants in the last five cases above, all of which are owned by different members of the Terry family (collectively the Terrys). On March 7, 2018, the court entered orders in the primary condemnation case, *Mountain Valley Pipeline LLC v. Easements to Construct*, No. 7:17-cv-492 (W.D. Va.) (Dkt. No. 592), granting MVP immediate possession of the easements on all of the properties.

Of the above five cases, two have settled (Case Nos. 7:20-cv-134 (Frank H. Terry, Jr.) and 7:20-cv-136 (Hilah Parks Terry)),[1] and one is set for trial in August 2025 (Case No. 7:20-cv-135 (John Coles Terry). In the other two (Case Nos. 7:19-cv-145 (Elizabeth Terry Reynolds) and 7:21-cv-99 (Grace Terry), the court granted summary judgment for MVP and judgment was entered without a trial, in September 2023 and August 2023, respectively. The landowners then appealed, the cases were reversed and remanded, and new trials are in the process of being scheduled.

The Terrys were initially represented by Charles M. Lollar (Lollar) and Charles M. Lollar, Jr., both of Lollar Law, PLLC (all three collectively Lollar Law), but they subsequently obtained new counsel, Joseph V. Sherman, who continues to represent them. Pending before the court are motions to strike filed on behalf of the landowners in each case, which ask the court to strike a notice of attorney's lien filed by Lollar Law. The motions are fully briefed and were argued before the court. For the reasons set forth herein, the court will deny the motions to strike and will refer the two settled cases to U.S. Magistrate Judge Joel C. Hoppe for a report and recommendation addressing certain issues, including the proper amount of any fees and costs to be awarded to Lollar Law in quantum meruit.

---

[1] In Case No. 7:20-cv-136, Frank Terry, as executor of Hilah Parks Terry's estate, has been substituted as the defendant, but the court will refer to that case as being Hilah Parks Terry in order to avoid confusion.

## I.  BACKGROUND

### A.  Procedural Background

Lollar Law initially represented the Terrys while their respective properties were part of the primary condemnation case, 7:17-cv-00492.  All of the individual properties listed in the style of this opinion were subsequently severed and consolidated into Case No. 7:19-cv-00145. On April 19, 2019, in that severed case, the Clerk received copies of letters sent to Lollar by the Terrys, terminating him and his firm as their attorneys and explaining what they believed to be deficiencies in Lollar's representation of them, including a lack of adequate communication.[2] (Case No. 7:19-cv-00145, Dkt. No. 3.)  Lollar subsequently filed a motion for extension of time to respond to discovery, which was denied as moot.  (*Id.*, Dkt. Nos. 4, 5.)

On May 7, 2019, Sherman filed a notice of appearance for the Terrys and about a month later moved to substitute.  (*Id.*, Dkt. Nos. 7, 8.)  The motion to substitute was granted on July 12, 2019, at which time the Lollars and their firm were terminated as counsel of record.[3]  (*Id.*, Dkt. No. 9.)  Thereafter, Mr. Sherman moved to sever the case into separate cases for the respective properties (except that two of the properties remained combined in one of the new cases), and the court granted that motion.  (*Id.*, Dkt. Nos. 11, 17.)  The two properties in Case No. 7:20-cv-136 (Hilah Terry) were later severed, as well, and the property owned by Grace Terry was assigned Case No. 7:21-cv-99.

The only action Lollar Law took in the newly created cases was to file its "Notice of

---

[2]  As explained by the court in a later order, Lollar remained counsel of record for defendants and the court refused to consider documents filed *pro se* by the parties because they were represented by counsel.  (Dkt. No. 6.)

[3]  In the main case, Lollar Law has not technically been terminated from the docket as one of the attorneys of record for the properties, but that is only because the substitution occurred *after* the properties were severed. Starting in September 2021, moreover, Mr. Sherman began filing motions on behalf of the Terrys in the main case. (*See, e.g.*, Case No. 7:17-cv-00492, Dkt. No. 1490.)

Attorney's Lien." (*E.g.*, Case No. 7:20-cv-135, Dkt. No. 3.)[4]  Lollar Law filed its lien notices in April 2020 in four of the severed cases.  At the time the notice was filed in Case No. 7:20-cv-136, Grace Terry's property was still part of that case.  Lollar Law filed a separate notice of lien in Case No. 7:21-cv-99 (Grace Terry) in September 2024.

In response to the letters to Lollar Law from the Terrys terminating representation, Lollar advised that he would "begin work on our invoice for time spent since our engagement."  (Mot. to Strike, Ex. F, Dkt. No. 51-6.)  Despite this statement, Lollar Law did not provide a detailed invoice in any of these cases until it filed its response to the motion to strike, at which time it provided invoices only for the two settled cases, Case Nos. 7:20-cv-134 (Frank Terry) and 7:20-cv-136 (Hilah Parks Terry).

In the lien notices, Lollar Law states that it is asserting a "*quantum meruit* attorney's fee lien based upon legal services performed and costs incurred" by it in connection with representing the Terrys.  (Notice 1, Dkt. No. 3.)  Each notice asserts that Lollar Law acted as counsel of record for defendant from November 21, 2017, until July 11, 2019.  Lollar Law states that it "invested significant time and resources in representing" the Terrys and that such work was "reasonable" and "necessary under the circumstances."  (Notice 2.)  The notice further states that Lollar Law "was terminated without cause."  (*Id.*)

Pursuant to the engagement agreement—which Lollar Law has not provided but describes—Lollar Law's fee was to be equal to one-third of any contingent recovery above the amount of MVP's pre-suit offer.  (*Id.* at 2, ¶ 4; Resp. 10, Dkt. No. 56 (both indicating the contingency only applied to recover amounts above an unspecified "stipulated amount").)  *See Mountain Valley Pipeline, LLC v. 1.85 Acres of Land, Owned by Lucki*, No. 7:19-CV-147, 2021

---

[4]    The parties' briefing on the motion to strike is identical in all of the cases, but each case has different CM/ECF numbers.  Unless otherwise noted, references to docket numbers from this point forward in the opinion will be to Case No. 7:20-cv-135.

WL 11958988, at *1 (W.D. Va. Mar. 31, 2021), *report and recommendation adopted,* No. 7:19-CV-00147, 2021 WL 11959059 (W.D. Va. Aug. 17, 2021) (explaining a similar arrangement Lollar Law had with another client and noting that the stipulated amount was MVP's pre-suit written offer); *Mountain Valley Pipeline, LLC v. 3.70 Acres of Land, Owned by Werner*, No. 7:19-CV-00180, 2020 WL 7024502, at *1 (W.D. Va. Nov. 30, 2020) (same); *Mountain Valley Pipeline, LLC v. 2.93 Acres of Land Owned by Waldron & Martin*, No. 7:19-CV-00150, 2019 WL 6833665, at *1 (W.D. Va. Dec. 13, 2019) (same).

## B. Motion to Strike and Overview of the Parties' Arguments[5]

On September 4, 2024, counsel for the Terrys filed a motion to strike the notice of attorney's lien, filing an identical pleading in all five cases where Lollar Law had filed its notice of lien. (Dkt. No. 51.)   In arguing that the notice of lien should be struck, the Terrys rely primarily on the doctrine of laches.  The Terrys characterize Lollar Law's failure to earlier provide an itemization or invoice as waiting "more than five (5) years to enforce a contract," and claim that the delay is grounds for laches.  (Mot. to Strike 7.)  For support, they cite to Virginia Code § 8.01-246—which establishes five-year limitations period for written contracts and a three year period for unwritten, unsigned, or implied contracts—and to several Virginia cases for the proposition that where a statute of limitations has run on an underlying legal claim, laches bars an equitable claim.  (*See id.*)  They also cite to non-binding authority from other jurisdictions for the proposition that the enforcement of a lien for attorney's fees is time barred when a claim on the underlying debt has become time barred.  (*See id.* (citing *Davis v. King*, 560 F. App'x 756, 760 (10th Cir. 2014) and others).)

---

[5] Other issues were raised in the parties' briefing and at the hearing, including whether Lollar Law was terminated with or without cause and the reasonableness of the fees sought.  But, as noted in the text, the parties agreed that the only issue currently before the court is the timeliness of Lollar Law's quantum meruit claims.  Thus, the court does not discuss those other arguments in any detail.

Lollar Law counters that it has properly filed a "charging lien" and that, pursuant to Virginia Code Ann. § 54.1-3932, it has "a lien upon the cause of action as security for his fees and any services rendered in relation to the cause of action or claim." The lien statute provides that once written notice of the lien is given, "any settlement or adjustment of the cause of action shall be void against the lien so created, except as proof of liability on such cause of action." Va. Code Ann. § 54.1-3932. Lollar Law also cites to secondary authority and cases from other states for the proposition that an attorney's "charging lien for his services is, to the extent of such services, regarded as an equitable assignee of the judgment or funds produced by his efforts." (Resp. 9 (quoting *United States v. Hudson*, 39 F. Supp. 797, 797 (D. Mont. 1941)).) Thus, its argument continues, the lien attaches only when there becomes an award or settlement to which it can attach. As a result, Lollar Law contends that its lien is not barred by laches. Lollar law insists that "the contract statute of limitations is not applicable here." (*Id.* at 13.)

The parties' briefing asserts other arguments, as well.[6] But at the hearing, the parties agreed that the sole issue before the court at this time—and the only one raised in the motion to strike itself—is whether the lien notices should be struck, either as time-barred or as a result of laches. They further agreed that the court would be required to hold an evidentiary hearing or otherwise be provided evidence to ascertain whether Lollar Law's termination was with or without cause, as well as the appropriate amount of any award, so those issues are not properly

---

[6] For example, Lollar Law quotes language from its engagement letter with the Terrys, stating, "You also agree to submit any fee dispute for resolution to the Virginia State Bar [VSB] Dispute Program." (Resp. 2.) And it asks that the court refer determination of the amount owed to Lollar Law to the VSB Fee Dispute Program. (*Id.* at 14.) As the court noted at the hearing, however, the VSB's program allowing for fee negotiations is generally voluntary, and no party had provided any authority as to whether the program could be made mandatory pursuant to an engagement agreement. Additionally, it is unclear whether that provision applied to attorneys' fees. It followed a paragraph in the engagement letter referring only to the "fees and costs of litigation, such as expert witness fees . . . ." (Resp. 3 (quoting engagement letter).) In any event, there is no separate motion asking for such a referral. So, the court does not address that issue at this time. If Lollar Law contends that the Terrys are required to utilize the VSB program, it may make that argument to U.S. Magistrate Judge Joel C. Hoppe in the course of Judge Hoppe's proceedings to recommend an award of fees and costs.

before the court at this time.  Consistent with the foregoing, the issue before the court at this time is a narrow one: whether the lien notices should be struck, either because they are barred by the statute of limitations or on the basis of laches.

## II.  DISCUSSION

### A.  Statute of Limitations for Quantum Meruit Claim

As the parties agree, a contingent-fee attorney who is terminated may claim fees based on past work, but he must do so via a quantum meruit claim in Virginia, as established nearly fifty years ago in *Heinzman v. Fine, Fine, Legum and Fine*, 234 S.E.2d 282 (Va. 1977).  *Heinzman* held that when "an attorney employed under a contingent fee contract is discharged without just cause and the client employs another attorney who effects a recovery, the discharged attorney is entitled to a fee based upon quantum meruit for services rendered prior to discharge and, as security for such fee, to the lien granted by Virginia Code § 54-70 [now Code § 54.1-3932]." *Hughes v. Cole*, 465 S.E.2d 820, 833 (Va. 1996) (quoting *Heinzman*, 234 S.E.2d at 286).  *See also Braude & Margulies PC v. Pierce Assocs., Inc.*, 869 F.2d 593, 1989 WL 14258, at *3 (4th Cir. 1989) (unpublished table decision) (affirming district court's finding that the contingent fee agreement between the client and his first law firm had been reformed and could no longer be enforced and noting the general rule in Virginia that, "in the absence of an agreement to the contrary, arrangements for professional services are appropriately valued on *quantum meruit*").

Lollar acknowledges this, and he also relies on the Virginia statute governing certain liens and referenced in *Hughes* as providing security for an attorneys' claim—Virginia Code Ann. § 54.1-3932.  The Terrys have not challenged the propriety of Lollar Law's using the lien or the applicability of the lien statute.[7]  Instead, they argue only that the lien (particularly without

---

[7]  The court notes, however, that it is unclear whether that statute even applies here, where the client's claim is a condemnation proceeding.  By its terms, the statute refers to an attorney who assists a client with a cause of action "sounding in tort," "for liquidated or unliquidated damages on contract," or "for annulment or divorce."

any invoice) is insufficient to toll the statute of limitations on the quantum meruit claim or to overcome Lollar Law's lack of diligence in pursuing its quantum meruit claim. Given that there is a remedy available in quantum meruit and that any lien would merely act as security for that remedy, the court need not determine the applicability of either a statutory or common-law lien in this particular case.

Turning to the applicable statute of limitations for the quantum meruit claim, the Terrys suggest that the limitations period for the claim is either the three-year period for an unwritten or implied contract or, at most, the five-year period for written contracts. (Reply 3, Dkt. No. 59 (citing Va. Code § 8.01-246(A)(2), (4)).) Similar implied contracts or equitable claims in Virginia often are subjected to a three-year period. Illustrative is *Belcher v. Kirkwood*, 383 S.E.2d 729 (Va. 1989), in which the court found that unjust enrichment claims arising from an oral contract were barred by the statute of limitations. *Id.* The court specifically stated that "if a legal demand be asserted in equity which at law is barred by statute, it is equally barred in equity." 383 S.E.2d at 731 (citation, internal quotation marks, and emphasis omitted); *see also id.* (describing it as well established that "in respect to the statute of limitations equity follows the law"). The *Belcher* court summarized that "the statute of limitations applicable to oral contracts bound the trial court in its ruling on the defense of laches." *Id.*

Relying on *Belcher*, courts have flatly stated that the three-year limitations period applies to quantum meruit claims. *E.g.*, *Heritage Disposal & Storage, L.L.C. v. VSE Corp.*, No. 115CV1484AJTMSN, 2017 WL 361547, at *11–12 (E.D. Va. Jan. 24, 2017) ("Under Virginia

Notably, the underlying claim in both *Heinzman* (tort) and *Hughes* (contract) both fell squarely within the statute's scope.

One Western District of Virginia opinion has held that a condemnation claim against a landowner by a pipeline does not constitute a landowner's cause of action sounding in tort or contract, and thus that § 54.1-3932 was inapplicable to a similar request in that case by Lollar Law. *Atlantic Coast Pipeline, LLC v. 10.61 Acres*, No. 3:18-CV-00071, 2019 WL 5104755, at *4 (W.D. Va. Oct. 11, 2019). In the same opinion, the court declined to determine whether Lollar Law had a "charging lien" arising under federal common law because it concluded that Lollar Law may be entitled to its fees through a quantum meruit claim under Virginia law. *Id.* at *4 n.1.

law, a three-year statute of limitations applies to plaintiff's *quantum meruit* and unjust enrichment claims." (citing Va. Code Ann. § 8:01–246(4))); *RMS Tech., Inc. v. TDY Indus., Inc.*, 64 F. App'x 853, 857–58 (4th Cir. 2003) (holding that both express unwritten contracts and contracts implied in law, which are "necessarily unwritten," are subject to Virginia's three-year limitations period in Virginia Code § 8.01-246(A)(4)).  And even in cases that have limited *Belcher* to only *certain types* of unjust enrichment cases, the courts have recognized that the three-year limitations period is generally applicable to an unjust enrichment claim involving contracts between the parties.  *E.g.*, *In re Poe*, Civil No. 1:21-CV-867, 2022 WL 2820095, at *6 & nn.4–5 (E.D. Va. July 18, 2022).

Assuming without deciding that a three-year (or five-year) statute of limitations applies, however, it is not clear that the limitations period has expired, as the Terrys argue.  Whether it has expired depends on when the cause of action accrues, thereby starting the running of the limitations period.  The Terrys insist that the limitation period began to run as of the date Lollar Law last performed services, not upon judgment or settlement.  (Reply 3-6.)  For its part, Lollar Law contends that the limitations period for contracts should not apply at all.  If it does, however, it accrues only after settlement or judgment because the firm's recovery is limited by the original contingency agreement and cannot be determined until judgment or settlement.

Language in cases applying Virginia law supports both views.[8]  On the one hand, the

---

[8]  In addition to there being no clear answer under Virginia law, there does not appear to be a uniform approach among other states in these circumstances.  *Compare, e.g.*, *Fracasse v. Brent*, 494 P.2d 9, 15 (Cal. 1972) (stating that a discharged attorney may recover "the reasonable value of the services he rendered" before discharge, not the contingency fee, but nonetheless holding that "the cause of action to recover compensation for services rendered under a contingent fee contract does not accrue until the occurrence of the stated contingency) *with In re Estate of Horwitz*, 863 N.E.2d 842, 846 (Ill. Ct. App. 2007) (holding in same circumstances that attorney's quantum meruit claim "accrues immediately after his services are terminated even in the absence of any monetary recovery").  *See also* 7A *C.J.S. Attorney & Client* § 501 ("An attorney's right of action for compensation, generally, accrues at the time the services contemplated by his or her contract of employment have been substantially performed, or, where the compensation is to be paid on a certain contingency, on the happening of the contingency."); Annotation, *When statute of limitation commences to run against action by attorney on contingent fee who was discharged or withdrew before determination of litigation or other event upon which his compensation was contingent*, 118 A.L.R. 1281 (1939 & Supp.) (collecting authority for both approaches).  *Cf. See also Sohn v. Brockington*, 371 So. 2d 1089, 1094 (Fla. Dist. Ct. App. 1979) (stating that an attorney discharged before the contingency has been accomplished

Terrys are correct that the Supreme Court of Virginia (SCV) has stated that a cause of action by a discharged attorney accrues at the time services are terminated.  In *Beale v. Moore*, 342 S.E.2d 696, 699 (Va. 1945), the court explained that, in the absence of a continuing relationship in which the attorney is providing services, the limitations period began to run on fees owed to attorneys at the time the representation was terminated.  The continuing services exception (inapplicable here) simply holds that if an undertaking requires continued services between attorney and client, the statute of limitations for a quantum meruit claim does not begin to run until the termination of the undertaking, even if the attorney had a right to require payment before that termination.  *Wood v. Carwile*, 343 S.E.2d 346, 349 (Va. 1986) (citing and adopting *McCormick v. Romans & Gunn*, 198 S.E.2d 651 (Va. 1973)).

On the other hand, language from other cases states that a quantum meruit claim accrues when money is due and not paid, which generally would be upon the occurrence of the contingency from the original agreement.  *Wood*, 343 S.E. 2d at 326–27 (noting that aside from that "special rule . . . applicable to a continuing agreement between attorney and client," the statute of limitations begins to run at the time of the accrual, or when the attorney has a "right to require payment for their services"); *Heritage Disposal & Storage, L.L.C. v. VSW Corp.*, No. 115CV1484AJTMSN, 2017 WL 361547, at *11 (E.D. Va. Jan. 24, 2017) ("For quasi-contract claims such as *quantum meruit* and unjust enrichment, a cause of action accrues when the money due is not paid.") (citation omitted); *Lismont v. Alexander Binzel Corp.*, No. 2:12–cv–592, 2013 WL 6095461, at *13 (E.D. Va. Nov. 18, 2013) ("The unjust enrichment begins to accrue at the moment the expected compensation is not paid.").  *See also Taylor Chiropractic Clinic, LTD. v. Gupton*, 10 Va. Cir. 227, 1987 WL 889422, at *2 (Va. Cir. Ct. Nov. 9, 1987) (holding that where

---

may choose to delay his action against former client until occurrence of the contingency so that the court may weigh the impact of his services of the final outcome, but by doing so, he runs the risk of his claim being time-barred in those jurisdictions which have adopted the rule that the cause of action accrues immediately upon discharge).

medical services were provided pursuant to an agreement allowing the client's payment to be deferred pending the outcome of his personal injury suit, the chiropractor had "no right to demand . . . payment" until judgment was awarded in the personal injury action, and thus his cause of action did not accrue until that time).

In a case applying California law, the Fourth Circuit described the law similarly. *3074 Centreville LLC v. M.A. Cohen & Co.*, No. 24-1054, 2025 WL 1177258 (4th Cir. Apr. 23, 2025). It reasoned: "Although the statute of limitations on a cause of action for quantum meruit for personal services usually begins to run when those services or the relationship between the parties terminate[,] . . . [w]here services are provided with the understanding that payment for those services will be made at some time after the termination of those services or upon some contingency, the statute of limitations does not begin to run until that time arrives or contingency occurs."[9] 2025 WL 1177258, at *5 (quoting *Zakk v. Diesel*, 33 Cal. App. 5th 431, 455 (2019))).

Having reviewed these seemingly conflicting rules, the court concludes that accrual at the time the contingency occurs (generally, judgment or settlement) is the more reasoned approach. In large part, that conclusion is based on another conclusion the court discusses next: Lollar Law it is not entitled to *any* fee, even in quantum meruit, that would exceed the amount it could receive pursuant to its contingency agreement with each landowner. Indeed, Lollar Law has conceded this point, at least in this case, by repeatedly stating at the hearing that if the award or settlement was less than MVP's pre-suit offer, Lollar Law would not be entitled a fee. *But see Atl. Coast Pipeline, LLC v. 8.10 Acres, More or Less*, Case No. 6:18-cv-00051, ECF No. 79, at 5

---

[9] The quote continues, "Under those conditions, the Statute of Limitations begins to run from the time the last service is rendered." *Johnstone v. E & J Mfg. Co.*, 114 P.2d 658, 659 (Cal. Dist. Ct. App. 1941) (citing *Corato v. Estate of Corato*, 201 Cal. 155, 159 (1927))." While this language appears to ignore the prior contingency language, in *Centreville*, one party allegedly received non-brokerage advisory services but could not afford to pay for the services; thus, the advisor agreed to payment in the form of an equity partnership when the venture expanded. While the advisee disavowed that agreement, services ceased and the contingency failed on the same day.

(W.D. Va. Mar.  , 2025), *report and recommendation adopted in its entirety by* Case No. 6:18-cv-00051, ECF No. 83 (W.D. Va. June 5, 2025) (rejecting the argument, raised by Lollar Law, that "a contingency fee cap should not limit its fees").

Although the SCV does not appear to have adopted—or rejected—the rule, at least one lower Virginia court has stated that an attorney in Lollar Law's position cannot recover in quantum meruit more than what is otherwise provided for under the client's contingency agreement. *Appleton v. Bondurant & Appleton, P.C*, 68 Va. Cir. 208, at *13 (Va. Cir. Ct. July 5, 2005) (noting that "the *quantum meruit* recovery cannot be more than the contingent fee").

Additionally, this court has previously adopted the approach that the quantum meruit recovery is limited by the original contingency agreement.  In a report and recommendation, then-U.S. Magistrate Judge Robert Ballou reasoned that Lollar Law could not recover "more than the total contingency fee to which the [landowners] originally agreed."  *Mountain Valley Pipeline v. 2.93 Acres of Land (Waldron)*, Case No. 7:19-cv-150 (W.D. Va. Oct. 25, 2019), R. & R., ECF No. 26.  For support, Judge Ballou cited to several cases from North Carolina, which had imposed a similar limitation on the basis that "it would be unfair to require the client to pay attorneys' fees in excess of the contingent fee to which they had agreed."  *Id.* (citing *In re EBW Laser, Inc.*, 333 B.R. 351 n.2 (Bankr. M.D.N.C. 2005) and *Guess v. Parrott*, 585 S.E.2d 464, 472 (N.C. Ct. App. 2003)); *see also Fracasse*, 492 P.2d at 14 (explaining this same limitation and noting it was one of the primary reasons the court opted for the rule that accrual occurs upon contingency).

This court adopted that Report & Recommendation, specifically noting that any potential fee was limited by the contingency fee agreement. *Mountain Valley Pipeline, LLC v. 2.93 Acres of Land Owned by Waldron & Martin*, No. 7:19-CV-00150, 2019 WL 6833665, at *2 & n.2 (W.D. Va. Dec. 13, 2019).  *See also Atl. Coast Pipeline, LLC v. 8.10 Acres, More or Less*, Case

No. 6:18-cv-00051, (W.D. Va. Mar. 28, 2025), ECF No. 79, at 5, *report and recommendation adopted in its entirety by* Case No. 6:18-cv-00051 (W.D. Va. June 5, 2025), ECF No. 83 (collecting authority and concluding that "[c]onsidering the clear authority, the Court finds that a contingency agreement caps the amount a discharged attorney may recover under quantum meruit"). In the absence of any authority from Virginia holding to the contrary, the court sees no reason to alter its previous ruling on this issue. Thus, the court agrees with Lollar Law's concession that it is not entitled to recovery for attorneys' fees in quantum meruit unless there is a recovery by its former client above the MVP offer.[10]

Given that determination, no "payment is owed" to Lollar Law at all (at least with regard to fees) unless and until the landowner settles or obtains judgment in the lawsuit *and* that amount is for more than MVP's pre-suit offer. As a result, using the rule that a quantum meruit claim accrues when payment is due and not paid, settlement or judgment is the natural event triggering the limitations period. The same result obtains if the court follows the language that accrual occurs upon the event set forth in the parties' contract. *E.g.*, *Taylor Chiropractic Clinic*, 10 Va. Cir. 227, at 1987 WL889422, at *2. Put differently, the statute of limitations accrues in this case upon resolution or settlement because it is only then that it can be known whether *any* fee is due.

Also influencing the court's decision on accrual are the factors courts must look to in order to determine the appropriate amount owed in quantum meruit. *See County of Campbell v.*

---

[10]  That is not the rule in all jurisdictions, some of which allow recovery by the terminated contingent fee attorney even where there is no subsequent recovery by the plaintiff. *See generally* Lester Brickman, *Setting the Fee When the Client Discharges a Contingent Fee Attorney*, 41 Emory L.J. 367 (1992) (discussing the issue and citing authority from various jurisdictions). But limiting recovery to a discharged attorney to no more than the contingency agreed-upon by the parties appears to best protect a client's ability to discharge an attorney. *See id.* at 369–70 (advocating for a rule that does not permit recovery in quantum meruit "unless the underlying suit is successful" and that caps the attorney's recovery at the contingency percent in successful cases); *see also Rosenberg v. Levin*, 409 So. 2d 1016, 1021 (Fla. 1982) (adopting that rule, which it called the "modified quantum meruit rule," and explaining the rationale for it).

*Howard*, 112 S.E. 876, 885 (Va. 1922) (setting forth factors)[11]  Specifically, the final factor that

must be considered is "the result secured by the services of the attorney . . . ; but merely as

bearing upon the consideration of the efficiency with which they were rendered, and, in that way,

upon their value on a quantum meruit, not from the standpoint of their value to the client."

*Gilbert LLP v. Tire Eng'g & Distribution, LLC*, 689 F. App'x 197, 200 (4th Cir. 2017) (quoting

*County of Campbell*, 112 S.E. at 885).  Because the "value to the client" of the result is not

relevant, in some cases parties have argued that the amount of recovery is immaterial to a former

attorney's quantum meruit claim.  Consequently, the argument continues, the attorney need not

wait until final judgment or settlement to seek quantum meruit.

There is another case from this court that—at least to some degree—supports that

reasoning.  Specifically, in a Report and Recommendation by a U.S. Magistrate Judge in *Morris*

*Law Office, P.C. v. Tatum*, *report and recommendation adopted as amended by* 388 F. Supp. 2d

689 (W.D. Va. 2005), the court rejected—as "wholly without merit"—the former client's

argument that a quantum meruit claim was not yet ripe because, although a judgment had been

entered in favor of the client, that judgment was on appeal and had not yet been collected.  R&R,

388 F. Supp. 2d at 711 & n.20.[12]  In doing so, the R&R interpreted *Heinzman* and the final

*County of Campbell* factor to mean that "an award of *quantum meruit* fees should be made

*independent* of any benefit to the client and according to the objective and reasonable value of

[the prior attorney's] services up to the point of termination essentially based on a lodestar

calculus."  *Id.* at n.20.  That portion of the R&R was not disturbed by the district court.

---

[11]  Those factors include, among others, the amount and character of the services rendered; the character and importance of the matter, including the amount of money involved; the professional skill and experience called for; the character and standing in their profession of the attorneys; and whether the fee is absolute or contingent. *Gilbert LLP v. Tire Eng'g & Distribution, LLC*, 689 F. App'x 197, 200 (4th Cir. 2017) (quoting *County of Campbell*, 112 S.E. at 885).

[12]  The district judge's published opinion in *Morris Law Office* included the entire text of the R&R, and both have the same reported citation.

But while *Morris Law Office* provides some support for the argument that the ultimate result is irrelevant to a quantum meruit claim, there is an important factual distinction between that case and this one.  In that case, a judgment had been obtained by the discharged attorney *before* discharge, and a judgment had been entered, so the contingency set forth in the parties' agreement had occurred.  So, while it was true there—as it is here—that any quantum meruit fees must be based only on the value of the services that were provided, the contingency had occurred and the amount of any limit on recovery could be determine.[13]

Furthermore, the Fourth Circuit has emphasized that the final *County of Campbell* factor *requires* consideration of "the result secured."  *Gilbert LLP v. Tire Eng'g & Distribution, LLC*, 689 F. App'x 197, 203 (4th Cir. 2017).  Although it recognized that "in theory" an analytical method that ignored a case's result could comport with *County of Campbell*, *id.* at 204 (citing to *Morris Law Office*, 388 F. Supp. 2d at 715), the *Gilbert* court nonetheless held that the district court abused its discretion in failing to give adequate consideration to the large award secured by the attorneys before their discharge.  Furthermore, the fact that there has been no result to take into account until the first two cases settled distinguishes this case from both *Morris Law Office* and *Gilbert LLP*.  In both of those cases, a judgment had been entered.

The Terrys insist that *Heinzman* answered this limitations issue in their favor, and they further cite to a 1932 bankruptcy case for support—*In re Funk*, 2 F. Supp. 555 (W.D. Va. 1932), *aff'd sub nom. Ruebush v. Funk*, 63 F.2d 170 (4th Cir. 1933).  But neither of those cases compel a different result.

*Heinzman* made clear that the amount of fees was to be based upon quantum meruit, and that the discharged attorney was not entitled to the discharged contingency fee from his contract.

---

[13] Regardless, and to the extent that *Morris* suggests a different result than that reached here, the court declines to follow that non-binding authority.

Lollar Law, however, is not challenging those propositions and is not seeking to recover the contingency fee. It is simply arguing that its cause of action does not accrue until judgment or settlement. And *Heinzman* does not speak to those issues; it did not involve any discussion of the statute of limitations for a quantum meruit claim or when it accrued. Further, as in most of the cases dealing with this topic, the result of the case for the client in *Heinzman* was known. Thus, *Heinzman* does not change the court's conclusion.

Similarly, the issue in *Funk* had to do with the assignability of a tort claim in Virginia at common law, and the court determined that whether an attorney's interest in such a claim was assignable depended on whether the claim was survivable. *See generally Funk*, 2 F. Supp. at 559. While the *Funk* court stated that an attorney's right to a contingent recovery existed at the time he and the client entered into the contract was entered into with the client, the court was not dealing with a quantum meruit award nor did it face the issue of when a limitations period accrues for quantum meruit purposes. The court declines to take statements from that non-binding authority out of context and apply it here to a completely different issue. Furthermore, a more recent case discussing *Funk*—*Montavon v. United States*, 864 F. Supp. 519 (E.D. Va. 1994)—suggests that the larger principles at work in *Funk* do not favor the Terrys' position on accrual. The *Montavon* court explained:

> Under Virginia law, [an attorney's lien] comes into existence on the making of the contract of employment between the client and attorney, but then remains inchoate until judgment or recovery is obtained. *See [United States v. City of New Britain*, 347 U.S. 81, 84 (1954)]* (lien becomes choate only when "identity of the lienor, the property subject to the lien, and the amount of the lien are established").

864 F. Supp. at 522 (internal footnotes and citations omitted).

The court recognizes that this is not a settled issue and that some other jurisdictions have selected a different rule. But particularly in a case where the discharged attorney concedes he is

17

not entitled to any recovery, even in quantum meruit, unless there is actually a judgment or settlement in the case above a certain amount, it is difficult to see how an appropriate and fair quantum meruit award could be determined *before* settlement or judgment, when that award both: (1) must account for the "result secured" as required by *County of Campbell*; and 2) must not allow recovery beyond the limits set in the contracted-for contingency—neither of which cannot be determined in the absence of the result.[14]

For these reasons, the court believes the better rule to be followed is that a discharged contingency attorney's quantum meruit claim accrues upon the occurrence of the contingency that entitled him to payment under his original agreement and that the limitations period runs from that time.[15]  With that limitation, the amount of the payment will be determined solely in quantum meruit, using the *County of Campbell* factors as required in Virginia.

So, for the two settled cases—whether the limitations period was tolled during appeal or not—the three-year limitations period has not yet expired.  The initial judgments were entered in April 2023 (for Case No. 7:20-cv-134) and August 2024 (for Case No. 7:20-cv-136), and the cases settled at some date in late 2024 while they were on appeal.  For the other two cases where judgment was entered—in August 2023 for Case Nos. 7:19-cv-145 (Elizabeth Terry Reynolds) and in September 2023 for Case No. 7:21-cv-99 (Grace Terry)—those cases were appealed,

---

[14]  The Second Circuit affirmed a lower court's use of an approach that attempted to solve this dilemma in *Universal Acupuncture Pain Services, P.C. v. Quadrino & Schwartz, P.C.*, 370 F.3d 259 (2d Cir. 2004).  The court acknowledged that, under New York law, a lawyer's right to recover in quantum meruit accrues upon discharge, but it held that the district court did not abuse its discretion by waiting to determine the *amount* of a possible award until the underlying litigation was completed.  370 F.3d at 264.

[15]  The Terrys also contend that Lollar Law's own actions in "waiving" a portion of its lien in the settled cases suggests that the cause of action already had accrued and that it did so at the time Lollar Law stopped providing services.  The court disagrees.  First of all, the Terrys cite no authority for that proposition.  And it is a common practice for parties to waive a potential or future right.  In short, acting as if one has the ability to forego a portion of a *potential* recovery does not mean that the cause of action for that recovery has accrued.  Here, it appears that Lollar Law did that to assist in effecting a settlement in the case and consistent with its agreements with the Terrys that it could not recover fees on recovered amounts under MVP's pre-suit offer.  The court does not interpret that as any acknowledgement that the quantum meruit cause of action had accrued or existed at that time.

reversed and remanded, and will be retried.  Again, regardless of whether the limitations period

is tolled while the cases are on appeal, the three-year period began to accrue in August 2023 and

has not yet expired.[16]  Lastly, for Case No. 7:20-cv-135 (John Coles Terry), in which judgment

has not yet been entered, Lollar Law's cause of action has not yet accrued.

For the above reasons, and to the extent Lollar Law's quantum meruit claims are strictly

governed by Virginia's three-year limitations period (or a five-year limitations period), the

motions to strike must be denied.  Its claims are not yet time-barred as to any of five cases.

**B. Laches**

The Terrys also rely on the defense of laches.  As the Supreme Court of Virginia has

explained,

> Laches is a defense against equitable claims where the plaintiff fails
> "to assert a known right or claim for an unexplained period of time
> under circumstances prejudicial to the adverse party." *Stewart v.
> Lady*, 251 Va. 106, 114, 465 S.E.2d 782 (1996) (citation and internal
> quotation marks omitted).  The party asserting laches carries the
> burden of proof. *Id*. Although laches is within the circuit court's
> discretion, this Court "will not approve such finding if the party
> asserting this defense fails to prove prejudice." *Id*.
>
> . . .
>
> While a court must determine laches based on each case's
> "particular circumstances," it is "well-established" that "in respect
> to the statute of limitations equity follows the law." *Belcher v.
> Kirkwood*, 238 Va. 430, 433, 383 S.E.2d 729 (1989) (citation and
> internal quotation marks omitted).

*May v. R.A. Yancey Lumber Corp.*, 822 S.E.2d 358, 368 (Va. 2019).

To the extent that laches, as an equitable defense, applies and utilizes something other

---

[16] Four of the cases present an interesting question: Was the limitations period, which the court has now ruled accrued upon judgment, tolled by the subsequent appeal or has it instead been running since entry of the judgments?  Regardless of the answer to that question, Lollar still has time to seek relief in those cases because— even without tolling—the three-year limitations period has not expired in them.  The court therefore declines to offer an advisory opinion on that issue.

than a strict statute of limitations despite the action being based in contract, the court also finds laches unavailable.  To prevail on a laches defense, defendants must prove "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense."  *Nat'l R&R Passenger Corp. v. Morgan*, 536 U.S. 101, 121–22 (2002).

Although Lollar Law has not initiated a separate lawsuit or filed a formal pleading seeking its fees in any of these cases, it filed a notice of lien in the -145 case within a year after its termination.  Moreover, as already discussed above, there is a good-faith basis for Lollar Law to believe that its cause of action does not accrue until after settlement or judgment in the landowner's favor in each case, and the court has now so held.  Thus, the court cannot find that there is a "lack of diligence" by Lollar Law warranting the striking of its notices of liens.  Indeed, this is what Mr. Lollar explained at the hearing before the court, stating that he did not see the point in pursuing a recovery prior to settlement or judgment, other than noting his lien, because if a client did not recover more than MVP's offer, he believed he would not be able to recover.  This does not reflect a lack of diligence, in the court's view.  Accordingly, the court will not strike the liens on the basis of laches.

## III.  CONCLUSION

For the reasons discussed herein, the court concludes that the statute of limitations as to Lollar Law's quantum meruit claims in these cases accrues upon judgment or settlement.  Its claims are therefore not time-barred, even under a three-year statute of limitations, in any of these cases.  The court further concludes that laches does not bar those claims.  For those reasons, the motion to strike the liens will be denied in each case.

Further, and in light of that conclusion, Lollar Law's claims for quantum meruit relief are clearly ripe in the two settled cases.  Although it has not yet filed a formal motion or separate action asserting its quantum meruit claim in those three cases, it has requested that the court

20

award the amounts set forth in those invoices. The court will therefore refer those two cases to U.S. Magistrate Judge Joel C. Hoppe for a report and recommendation on an appropriate amount of the quantum meruit award. As to the remaining three cases, Lollar Law has not expressly moved for fees nor has it provided any invoice with its billing information.

An appropriate order will be entered.

Entered: July 11, 2025.


/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge